## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARVIN MITCHELL,
      Petitioner,

v.
                                     Case No. 8:24-cv-873-TPB-TGW
                                     Case No. 8:19-cr-529-TPB-TGW

UNITED STATES OF AMERICA,
      Respondent.

_____

### ORDER DENYING MOTION TO VACATE SENTENCE

Marvin Mitchell moves under 28 U.S.C. § 2255 to vacate his convictions and sentence for conspiracy to distribute and distributing controlled substances. After pleading guilty, he is currently serving a sentence of 180 months. In this action, he challenges his convictions and sentence on six grounds and claims he received constitutionally ineffective assistance of counsel. Mitchell is entitled to no relief.

## I.    Background

Mitchell was charged with conspiring to distribute, and possess with the intent to distribute, cocaine base, fentanyl, and heroine resulting in a death, in violation of 21 U.S.C. §§ 846 and 841(b)(2)(C) (Count One); distributing, and possessing with the intent to distribute, fentanyl resulting in a death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (Count Two); distributing, and possessing with the intent to distribute, fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Three);

1

and possessing with the intent to distribute cocaine base, fentanyl, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) 841(b)(1)(C) and 18 U.S.C. § 2 (Count Four). (Crim. Doc. 61)   Under a plea agreement, Mitchell pleaded guilty to lesser included offenses charged in Counts One and Two, absent the allegations that the offenses resulted in a death. (Crim. Doc. 144 at 1–2)  Specifically, he pleaded guilty to conspiracy to distribute, and possess with intent to distribute, cocaine base, fentanyl, and heroin (Count One) and possession with intent to distribute fentanyl and heroine (Count Two).   (*Id*.)  The United States agreed to dismiss the remaining counts and to make specific sentencing recommendations.  (*Id*. at 3–4)

At sentencing, the United States objected to the U.S. Probation Office's conclusion that Mitchell did not qualify as a career offender under U.S. Sentencing Guidelines § 4B1.1.  (Crim. Doc. 158 at ¶ 63)  The Court sustained the objection and found Mitchell to be a career offender.  (Crim. Doc. 172 at 32 and 42)  One of Mitchell's offenses of conviction (Count Two) was a controlled substance offense, and he had two prior felony controlled substance offenses, including a 2008 Florida conviction for possession of cocaine with the intent to sell, manufacture, or deliver, and a 2009 Florida conviction for sale and delivery of cocaine.  (Crim. Doc. 165 at ¶ 63, final presentence report with Court corrections)

Mitchell objected to the drug weight attributed to him in the presentence report. To overcome that objection, the United States called one of Mitchell's co-conspirators, Emma Leifer. Based on her testimony, the Court overruled Mitchell's objection and held him accountable for 286.8 grams of fentanyl, 1.2 grams of fentanyl analogue, and 5.63 grams of cocaine base, which amounted to a total converted drug weight of 749.10 kilograms. (Crim. Doc. 172 at 25; Crim. Doc. 165 at ¶ 57) Under U.S.S.G. § 2D1.1(a)(5) and (c)(6), Mitchell's base offense level was 28 because his offenses involved between 700 and 1,000 kilograms of total converted drug weight. (Crim. Doc. 165 at ¶ 57)

With a total offense level of 29 and a criminal history category of VI, the Probation Office calculated an advisory guidelines range of 151 to 188 months. (Crim. Doc. 165 at ¶ 148) The Court sentenced Mitchell to 180 months, and a judgment was entered against him on August 22, 2022. (Crim. Doc. 166)

On direct appeal, Mitchell argued that the Court erred by sentencing him as a career offender and in determining the amount of drugs attributed to him. *United States v. Mitchell*, No. 22-12889, 2023 WL 565544 (11th Cir. Jan. 23, 2023) (brief of appellant). The Eleventh Circuit dismissed the appeal based on the sentence-appeal waiver in his plea agreement. *United States v. Mitchell*, No. 22-12889, 2023 WL 3085332, at *1 (11th Cir. Apr. 26, 2023).

## II.    Analysis

Mitchell now moves to vacate his convictions and sentence and claims: (1) he is not a career offender after *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*), and both trial and appellate counsel were ineffective for not challenging his career offender designation based on *Dupree*; (2) his Florida convictions are not predicate controlled substance offenses, and trial counsel was ineffective for not challenging his career offender designation on this basis; (3) appellate counsel was ineffective for not requesting that his appeal be stayed pending the resolution of *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022); (4) the plea agreement is vague because he did not know he could be sentenced as a career offender, and trial counsel was ineffective for allowing him to plead guilty to a vague plea agreement; (5) the plea agreement is defective because it does not specify the length of supervised release he faced, and trial counsel was ineffective for allowing him to plead guilty to an indeterminate amount of supervised release; and (6) the Court erred in determining the amount of drugs attributed to him, and counsel was ineffective for not challenging the Court's determination.  The United States responds that Mitchell's claims are procedurally defaulted and meritless.[1]  Mitchell's

---

[1] The Court rejects Mitchell's claims as meritless.  *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

claims lack merit, and this motion must be denied. [2]

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984). To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### A.    Ground One

Mitchell claims that he is not a career offender after *Dupree* and that both trial and appellate counsel were ineffective for not challenging his career offender designation based on *Dupree*.[3] *Dupree* holds that "the definition of 'controlled substance offense' in § 4B1.2(b) does not include inchoate offenses[,]" and conspiracy offenses under 21 U.S.C. § 846 qualify as inchoate

---

[2] An earlier order permits Mitchell to reply thirty days after the United States files its response. (Civ. Doc. 9) The United States filed its response on October 22, 2024. (Civ. Doc. 10) To date, Mitchell has not replied.

[3] *Dupree* was issued January 18, 2023, after Mitchell's 2022 conviction and sentence but before the Eleventh Circuit dismissed Mitchell's appeal on April 26, 2023.

offenses.  57 F.4th at 1271 and 1277–79 (ruling that "Dupree's conviction for conspiracy to possess with intent to distribute heroin and cocaine in violation of § 846 is not a controlled substance offense because the plain text of § 4B1.2(b) unambiguously excludes inchoate crimes").  Mitchell argues that because his § 846 conspiracy conviction in Count One is not a controlled substance offense after *Dupree*, he is not a career offender and both trial and appellate counsel should have advanced this argument.

A defendant is a career offender if the defendant (1) is "at least eighteen years old at the time [he] committed the instant offense of conviction;" (2) his "offense of conviction is a felony that is either a crime of violence or a controlled substance offense;" and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1.  A controlled substance offense is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, expert, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2.

*Dupree* entitles Mitchell to no relief.  *Dupree* was issued after Mitchell's 2022 sentencing, and "defendants are not entitled to an attorney capable of

foreseeing the future development of constitutional law."[4]  *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986).  The Eleventh Circuit has consistently held that "[a]n attorney's failure to anticipate a change in the law does not constitute ineffective assistance."  *Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019).  And, even if non-binding precedent existed from which counsel could have formulated a challenge to the career offender enhancement, counsel is not deficient for not doing so.  *See Bajorski v. United States*, 276 F. App'x 952, 954 (11th Cir. 2008) ("Even if a claim based upon an anticipated change in the law is reasonably available at the time counsel failed to raise it, such failure does not constitute ineffective assistance."); *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) ("[I]t generally does not fall below the objective standard of reasonableness for trial counsel to fail to raise a claim in anticipation that undeniably would lose under current law but might succeed based on the outcome of a forthcoming [appellate] decision."); *Pitts v. Cook*, 923 F.2d 1568, 1573–74 (11th Cir. 1991)("[L]awyers rarely, if ever, are required to be innovative to perform within the wide range of conduct

---

[4] Furthermore, *Dupree* cannot be applied retroactively.  "For a new rule to be retroactive, the Supreme Court must make it retroactive on collateral review."  *In re Joshua*, 224 F.3d 1281, 1283 (11th Cir. 2000).  The Supreme Court has not done so. *See Seymore v. United States*, No. 2:23-cv-469-SPC-NPM, 2024 WL 50805, at * 6 (M.D. Fla. Jan. 4, 2024).

that encompasses the reasonably effective representation mandated by the Constitution.").

Moreover, Mitchell's claim fails because he is a career offender *absent* his conspiracy conviction under § 846 in Count One because he was also convicted of distributing fentanyl and heroin under § 841 in Count Two. The presentence report applies the career offender enhancement because one of his *two* offenses of conviction is a controlled substance offense. His offense of conviction for distributing fentanyl and heroin under § 841 constitutes "a felony controlled substance offense." *United States v. Williams*, 718 F. App'x 890, 897 (11th Cir. 2017) (concluding that a career offender enhancement was properly applied when the offenses of conviction included violations of §§ 841 and 846 and the defendant had at least two prior felony controlled substance convictions). Accordingly, because Mitchell's § 841 conviction in Count Two constitutes a controlled substance offense to support the career offender enhancement, Mitchell cannot show that trial and appellate counsel rendered ineffective assistance by failing to argue that neither of his offenses of conviction qualifies as a predicate controlled substance offense. Counsel is not ineffective for failing to make a meritless argument. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 56 F.3d 1225, 1233 (11th Cir. 2008)).

B.    **Ground Two**

Mitchell claims that his prior felony convictions under Fla. Stat. § 893.13(1) are not predicate controlled substance offenses because they are "overbroad in that [they] incorporate[] inchoate offenses such as conspiracy and attempt."  (Civ. Doc. 6 at 7)  He argues that trial counsel was ineffective for not advancing this argument.

Mitchell's claim is foreclosed by binding precedent.  In *United States v. Smith*, 775 F.3d 1262, 1268–69 (11th Cir. 2014), the Eleventh Circuit expressly held that a drug conviction under Fla. Stat. § 893.13(1)(a) is a controlled substance offense under the career-offender provision in U.S.S.G. § 4B1.2(b). The Eleventh Circuit has subsequently reaffirmed *Smith* in published and unpublished decisions.  *See United States v. Hameen*, Nos. 19-14279 and 22-12968, 2023 WL 6053541, at *10 (11th Cir. Sept. 18, 2023) (concluding that "[the defendant's] challenge that his Florida drug convictions under Fla. Stat. § 893.13 do not qualify as controlled substance offenses under the Guidelines . . . is foreclosed by our binding precedent in *Smith*"); *United States v. Bishop*, 940 F.3d 1242, 1253– 54 (11th Cir. 2019) (affirming *Smith*'s holding that convictions under Fla. Stat. § 893.13 qualify as controlled substance offenses under the guidelines); *United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017) ("We are bound to follow *Smith*.").

Furthermore, in *United States v. Agerton*, No. 22-10194, 2023 WL 5537057, at *3–4 (11th Cir. Aug. 29, 2023), a panel of the Eleventh Circuit rejected the same argument that Mitchell advances here. The *Agerton* panel reasoned, "a defendant who attempts to transfer drugs commits the *completed* crime of distribution, not the *inchoate* crime of attempted distribution." *Id.* at *4. Therefore, because Florida's controlled substance statute "does not criminalize inchoate offenses, . . . Florida's § 893.13(1)(a) statute is not broader than the definition of 'controlled substance offense' in the § 4B1.2(g) guideline." *Id.* (citing *United States v. Penn*, 63 F.4th 1305, 1317 (11th Cir. 2023)). Accordingly, Mitchell's claim is foreclosed by binding precedent, and counsel is not ineffective for not advancing a meritless argument.

## C.    Ground Three

Mitchell claims that appellate counsel was ineffective for not requesting that his appeal be stayed pending resolution of *Jackson*, which holds that the defendant's 1998 and 2004 Florida cocaine-related convictions qualified as predicate serious drug offenses under the Armed Career Criminal Act ("ACCA"). On May 15, 2023 (after the Eleventh Circuit dismissed Mitchell's appeal on April 26, 2023, but before issuance of its mandate on May 25, 2023), the Supreme Court granted certiorari in *Jackson*, 143 S. Ct. 2457, No. 22-6640 (2023), and consolidated *Jackson* with *United States v. Brown*, 143 S. Ct. 2458, No. 22-6389 (2023). On May 23, 2024, the Supreme Court affirmed *Jackson*,

holding that "a prior state drug conviction may constitute an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown v. United States*, 602 U.S. 101, 118 (2024). According to Mitchell, at the time of his appeal, "*Jackson* had been granted certiorari under *Brown v. United States*, No. 22-6289 (2023)," and the "question posed is important because it decides which version of federal law to apply at the time of sentencing." (Civ. Doc. 6 at 10)

Neither *Jackson* nor *Brown* afford Mitchell relief because those cases concern the definition of serious drug offenses as ACCA predicates—not career offender predicates. *See United States v. Dubois*, 94 F.4th 1284, 1305 (11th Cir. 2024) (Rosembaum, J., concurring) ("[T]he text of ACCA's definition of 'serious drug offense' and the Guidelines' definition of 'controlled substance offense' differ in three important ways that make any such holding in *Jackson* and *Brown* inapplicable to the Sentencing Guidelines context."). Mitchell neglects to identify a reason that he would be entitled to relief under *Jackson* and *Brown*. And, because *Jackson* and *Brown* are inapplicable to his case, he cannot show that appellate counsel was ineffective for not requesting that his appeal be stayed pending the resolution of those cases.

### D.   Ground Four

Mitchell claims his plea agreement was vague because it "did not specify what section of Rule 11" of the Federal Rules of Criminal Procedure to which

11

he was pleading guilty.  (Civ. Doc. 5 at 8)  He argues that, if the plea agreement fell under Rule 11(c)(1)(C), "then the government seeking the § 4B1.1 is in violation of that Rule," and the plea agreement "is so vague . . . that the agreement cannot be knowing."  (*Id*. at 12)  He further argues that if he had known the United States could "seek a career offender enhancement he would have sought trial."  (*Id*.)  And, he claims trial counsel was ineffective for "failing to secure a plea agreement that noted what Rule 11 section he was being sentenced to."  (Civ. Doc. 6 at 10)

Mitchell cannot show that his plea agreement is so vague as to invalidate the knowing nature of his guilty plea.  Despite his assertions to the contrary, the plea agreement states that "the remaining counts against [him], Counts Three and Four, will be dismissed pursuant to Fed. R. Crim. P. Rule 11(c)(1)(A)."  (Crim. Doc. 144 at 3)  Furthermore, the plea agreement contains no restriction on the United States' ability to argue that the career-offender sentencing guideline applies to Mitchell.

The record conclusively refutes Mitchell's claim that his plea agreement was so vague that he did not know he could be sentenced as a career offender. During the plea hearing, the United States confirmed that the plea agreement did not have "specific provisions about low end or Guideline sentence or anything like that."  (Crim. Doc. 189 at 4)  The Court explained to Mitchell that

the sentencing guidelines are advisory, and Mitchell confirmed his understanding (*id.* at 8–9):

> COURT:        [The Probation Office] is going to calculate [the] Sentencing Guidelines. . . . [I]t's what we call advisory, meaning I can sentence you below that or above that.  But it is important factor in determining your sentence, and you understand that's going to be calculated after taking into account the facts of your case, the amount of dope involved, various other factors.
>
>               Do you understand that?
>
> MITCHELL:     Yes, sir.

Additionally, Mitchell twice confirmed during the plea hearing that he was satisfied with counsel's representation.  (*Id.* at 14)  At the conclusion of the hearing, the Court found that Mitchell was pleading guilty knowingly, intelligently, voluntarily, and with the advice of counsel, and Mitchell never objected to this finding.  (*Id.*)

Finally, at the sentencing hearing, Mitchell made no attempt to withdraw his guilty plea.  He neglected to notify the Court during allocution of his belief that counsel had provided constitutionally ineffective assistance or that he did not know he could be sentenced as a career offender.  (Crim. Doc. 172 at 34–35)

"Solemn declarations in open court," such as the declarations Mitchell made during the plea and sentencing hearings, "carry a strong presumption of

verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements under oath at a plea colloquy are true."). "[T]he representations of the defendant, his lawyer, and the prosecutor at a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id*. at 73–74. "[W]hen a defendant makes statements under oath . . . , he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Mitchell is entitled to no relief because he made specific assurances during both the plea and sentencing hearings that refute his current claim that he did not know he could be sentenced as a career offender and that he was dissatisfied with counsel's representation. *See United States v. Pease*, 420 F.3d 938, 940–41 (11th Cir. 2001) (concluding that counsel's failure to advise the defendant of a potential career offender enhancement did not render the plea involuntary when the magistrate judge informed the defendant he could not rely on counsel's sentence prediction); *see also Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) ("The district court is entitled to discredit a defendant's newly-minted story . . . when that story is supported only by the defendant's conclusory statements" and is contradicted by the record of the change-of-plea colloquy.). Because his claim is affirmatively

contradicted by the record of the plea and sentencing hearings, Mitchell has not carried his "heavy burden to show his statements were false." *See Rogers*, 848 F.2d at 168.

Finally, to establish prejudice in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Premo v. Moore*, 562 U.S. 115, 129 (2011). In his § 2255 motion, Mitchell argues that he would have proceeded to trial if he knew he could be sentenced as a career offender. However, he cannot show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 US. 356, 372 (2010). The United States' evidence against Mitchell, as summarized in the factual basis supporting Mitchell's guilty plea, was substantial, and Mitchell admitted these facts without objection. (Crim. Doc. 144 at 12–15; Crim. Doc. 189 at 12-13) Furthermore, he benefitted significantly by pleading guilty. Under the plea agreement, the United States agreed to move to dismiss Counts Three and Four from the Superseding Indictment and to recommend a three-point reduction to his offense level for acceptance of responsibility. (Crim. Doc. 144 at 3–4) Consequently, Mitchell fails to show that he was prejudiced by counsel's performance because he has not shown that a decision to reject the plea agreement would have been rational. *See McEarchen v. United States*, 859 F. App'x 880, 882 (11th Cir.

2021) (concluding that a decision to reject a plea bargain was not rational when the petitioner "accepted an advantageous plea arrangement . . . [which] eliminated the risk that he would receive a sentence exceeding ten years because the government agreed to forgo charging him for other federal crimes").

### E.    Ground Five

Mitchell claims that his "plea did not note [the] amount of supervised release." (Civ. Doc. 5 at 11)  He also claims, in one sentence and without any explanation, that "counsel was ineffective for allowing [him] to plea[d] guilty to an indeterminate amount of supervised release." (Civ. Doc. 6 at 12)

Mitchell is entitled to no relief because this claim is based on his mistaken belief that a plea agreement must specify the term of supervised release that a court will impose at sentencing.  Rather, "[i]n imposing a term of supervised release, the sentencing court must consider certain factors set forth in 18 U.S.C. § 3553(a)." *See United States v. Hernandez*, 750 F. App'x 866, 869 (11th Cir. 2018).

The record shows that Mitchell understood that the Court would impose a term of supervised release at sentencing.  Both the plea agreement and the presentence report state that Mitchell was subject to a term of supervised release "of at least 3 years." (Crim. Doc. 144 at 2; Crim Doc. 165 at ¶ 150)  At the plea hearing, the Court notified Mitchell that it could impose a term of

supervised release of at least three years, and Mitchell affirmed his understanding (Crim. Doc. 189 at 6):

COURT:          [Did] [a]nybody predict what sentence they think I'm going to give you?

MITCHELL:       No, sir.

COURT:          If they did, you shouldn't rely on it, because nobody, including me, knows what sentence I'm going to give you. Because I haven't even heard anything about you, your background, or the nature of this case.

So in addition to the 20 years, you could have a fine of a million dollars on each of these counts and a term of supervised release of at least three years and a special assessment of a hundred dollars.

Do you understand that?

MITCHELL:       Yes, sir.

Ultimately, the Court sentenced Mitchell to the statutory-minimum term of three years' supervised release. (Crim. Doc. 166 at 4; Crim. Doc. 172 at 38)

Mitchell's claim fails because makes no attempt to disavow his sworn declarations at the plea hearing that he understood he faced a minimum term of three years' supervised release and that the Court would impose a specific term of supervised release at sentencing. Furthermore, Mitchell fails to show he was prejudiced by counsel's performance in allowing him to plead guilty to an indeterminate term of supervised release. Mitchell does not go so far as to

17

claim that he would have proceeded to trial absent counsel's advice to plead guilty to an indeterminate term of supervised release. This alone bars relief. *See United States v. Brown*, 586 F.3d 1342, 1347 (11th Cir. 2009) (holding there was no reasonable probability that, but for an error regarding supervised release, the defendant would not have pleaded guilty); *see Thompson v. Wainwright*, 784 F.2d 1103, 1107 (11th Cir. 1986) (concluding that the defendant failed to show prejudice because he neglected to claim he would have chosen not to plead guilty if counsel correctly advised him of the applicable penalties).

### F.    Ground Six

Mitchell claims that "the drug weight was incorrect because [the] Court included unusable [foil] packaging as part of [the drug] weight." (Civ. Doc. 5 at 11) He further claims that counsel was ineffective for not challenging the Court's determination of the quantity of drugs attributable to him. (Civ. Doc. 6 at 13–14)

"For sentencing purposes, the government bears the burden of establishing drug quantity by a preponderance of the evidence." *United States v. Cintora-Gonzalez*, 569 F. App'x 849, 853 (11th Cir. 2014) (citing *United States v. Rodriguez*, 398 F. 3d 1291, 1296 (11th Cir. 2005)). "Where . . . the amount seized does not reflect the extent of the offense, the court should approximate the drug quantity." *Id*. "In estimating the quantity of drugs

18

attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996) (quoting U.S.S.G. § 2D1.1, cmt. n.12). The court's determination "may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, . . . [but it] cannot be based on calculations of drug quantities that are merely speculative." *Id.* (citing *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)). Furthermore, "[c]alculating a weight based on the 'gross weight' of a drug mixture, which includes unusable components, is error, and the Guidelines range must be evaluated based only on the usable net weight of the drug." *United States v. Gomez*, 818 F. App'x 907, 908 (11th Cir. 2020) (concluding that the district court's "approximation of the cocaine's net weight . . . was purely speculative" because "[w]ithout relying on any record evidence such as a laboratory report, photographs, or witness testimony, the District Court conclusively decided that the cocaine's packaging elements did not weigh any more than 100 kilograms").

The presentence report held Mitchell responsible for 286.8 grams of fentanyl because he admitted to distributing approximately 100 packages containing 0.1 grams of fentanyl per day, for approximately 28 days. (Crim. Doc. 160 at 14)  At sentencing, counsel objected to the drug weight as unsupported by the evidence. Counsel argued that, although the laboratory

report verified that each of the foil packages weighed "*less than* 0.1 [grams]," the presentence report improperly rounded up the measurement to 0.1 grams. (Crim. Doc. 161 at 3–6)  To substantiate the weight of the drugs, the United States called Mitchell's coconspirator, Emma Leifer, who testified at sentencing about the amount of drugs sold and the duration of the sales. (Crim. Doc. 172 at 14–17)   Based on her testimony, the Court overruled Mitchell's objection and found that the drug weight attributed to Mitchell in the presentence report was "very fair."  (*Id.* at 25)

Nothing in the record substantiates Mitchell's speculative claim that the weight of the aluminum foil packaging was improperly included in determining the amount of drugs attributed to him.  A movant is not entitled to relief when his claim is merely "conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1992); *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining that a defendant must allege "reasonably specific, non-conclusory facts . . . to undermine confidence in the outcome").

Furthermore, counsel lodged an objection to the quantity of drugs attributed to Mitchell, but the objection was overruled.  "The fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010).  Indeed, Mitchell

does not suggest what more counsel could have argued to support the objection. The record shows that counsel's objection was overruled not because of counsel's ineffectiveness but because the presentence report's calculation of the quantity of drugs attributed to Mitchell was supported by laboratory reports and witness testimony.  Finally, Mitchell cannot show he was prejudiced by counsel's performance because, as the Court observed during sentencing and as the presentence report explains, Mitchell's guidelines range would remain 151 to 188 months even with a lower base offense level because he is a career offender.  (Crim. Doc. 65 at ¶41; Crim. Doc. 172 at 32)

## III.   Conclusion

Mitchell's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 5) is **DENIED**.  The clerk is directed to enter a judgment against Mitchell, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

**CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Mitchell is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional

right." To merit a certificate of appealability, Mitchell must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Mitchell is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Mitchell must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 9th day of March, 2025.

**TOM BARBER**
**U.S. DISTRICT JUDGE**